IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLES RAY SUMMERS,

        Plaintiff,

v.                                      CIV 17-1207 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

        Defendant.

# MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse or Remand (*Doc. 18*), filed on July 8, 2018. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 4, 12, 13.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is not well-taken and will be denied.

## I.    Procedural History

Mr. Charles Summers (Plaintiff) filed an application with the Social Security Administration for Disability Insurance Benefits (DIB) under Title II of the Social Security Act on December 10, 2014. Administrative Record[1] (AR) at 225-29. Plaintiff alleged a disability onset date of November 24, 2014. *See* AR at 225. Because Plaintiff's earning record showed that he had "acquired sufficient quarters of coverage to remain insured

---

[1] Document 8-1 comprises the sealed Administrative Record. *See Doc. 8-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

through December 31, 201[9,]" Plaintiff was required to "establish disability on or before that date in order to be entitled to a period of disability and [DIB]." AR at 36, 38, 230.

Disability Determination Services determined that Plaintiff was not disabled both initially (AR at 137-49) and on reconsideration (AR at 150-61). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of his application. AR at 172-73. Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 51-96. ALJ Stephen Gontis issued an unfavorable decision on January 26, 2017. AR at 33-50. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 218-24), which the council denied on October 27, 2017 (AR at 1-6). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.    Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) meet or equal one of the

listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), he is unable to perform his past relevant work. 20 C.F.R § 404.1520(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [his] medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process,[2] ALJ Gontis found that Plaintiff "has not engaged in substantial gainful activity since November 24, 2014, the alleged onset date." AR at 38 (citing 20 C.F.R. §§ 404.1571-1576). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: osteoarthrosis; hyperlipidemia; degenerative joint disease; degenerative disc disease; diabetes mellitus; and obesity." AR at 38 (citing 20 C.F.R. § 404.1520(c)). ALJ Gontis also noted that Plaintiff's nonsevere impairments, "a prior myocardial infarction and hypertension[,] . . . were being managed medically, and the longitudinal medical record shows these conditions did not cause any ongoing

---

[2] ALJ Gontis first found that Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2019." AR at 38.

functional limitations." AR at 39 (citations omitted).

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 39 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). Ultimately, the ALJ found that through the date last insured, Plaintiff

> has the [RFC] to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except he is limited to: lifting, carrying, pushing, or pulling up to 20 pounds occasionally and up to 10 pounds frequently; sitting for up to six hours in an eight-hour workday; standing and/or walking for up to six hours in an eight-hour workday; occasionally reaching overhead with the left upper extremity; occasionally climbing ramps or stairs, but can never climb ladders, ropes, or scaffolds; frequently balancing, stooping, crouching, kneeling, or crawling; and never being at unprotected heights or around moving mechanical parts.

AR at 40. Looking at past relevant work at Step Four, the ALJ determined that, through the date last insured, Plaintiff can perform the jobs of security guard, gate guard, community service patrol officer, and patrol conductor. AR at 44-45. Ultimately, the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, from November 24, 2014, through the date of [the ALJ's] decision." AR at 46 (citing 20 C.F.R. § 404.1520(f)).

## III. Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v.*

*Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV.  Discussion

Plaintiff contends that the following issues require reversal: (1) "[t]he ALJ failed to properly and fairly weigh the opinions of Mary Ellen Clark," a Family Nurse Practitioner (FNP); (2) the ALJ erred in finding that Plaintiff's myocardial infarction was non-severe at Step Two and in failing to include limitations pertaining to the myocardial infarction in the RFC at Step Four; (3) "[t]he ALJ failed to properly weigh Plaintiff's credibility"; (4) "[t]he ALJ failed to develop the record and obtain pertinent medical evidence"; and

(5) "[t]he RFC exceeds the requirements of Plaintiff's past relevant work." *Doc. 18* at 18-23.

### A.     The Court will not remand based on the ALJ's decision at Step Two.

Plaintiff asserts that the ALJ erred in finding that his myocardial infarction was not severe at Step Two.[3] *Doc. 18* at 19-20. "[A]n error at step two of the sequential evaluation concerning one impairment is usually harmless when the ALJ, as occurred here, finds another impairment is severe and proceeds to the remaining steps of the evaluation." *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."); *Oldham v. Astrue*, 509 F.3d 1254, 1256-57 (10th Cir. 2007) (disposing of arguments relating to the severity of the claimant's impairments, finding it sufficient that the ALJ "made an explicit finding that [claimant] suffered from severe impairments[,]" which "was all the ALJ was required to do in that regard[,]" and noting that the claimant's "real complaint is with how the ALJ ruled at step five")). "This is because all medically determinable impairments, severe or not, must be taken into account at those later steps." *Id.* Here, ALJ Gontis found other impairments were severe

---

[3] Plaintiff argues that the ALJ erred in ignoring certain medical testimony regarding Plaintiff's shortness of breath, in failing to mention an abnormal EKG that was missing from the record, and in failing to consider his own testimony or function report. *Doc. 18* at 19-20. While the Court denies his Motion on this issue because the ALJ found other impairments severe and proceeded through the sequential evaluation, it takes up these arguments later in this opinion in the context of other issues.

at Step Two and continued through the rest of the sequential evaluation; thus, any Step Two error is harmless. *See* AR at 38-39.

**B. The Court finds no reversible error in the ALJ's credibility determination or evaluation of the medical evidence.**

### 1. Credibility determination

Before turning to the remainder of Plaintiff's Motion, the Court finds it helpful to consider the ALJ's credibility determination. Plaintiff argues that the ALJ erred by not giving more weight to "Plaintiff's exemplary work record." *Doc. 18* at 21. He relies on *Tyson v. Apfel*, where a district court found that a plaintiff's "good work history" entitled her to "substantial" credibility. 107 F. Supp. 2d 1267, 1270-71 (D. Colo. 2000) (citing *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)). In *Tyson*, the plaintiff "had an excellent work history until her onset date," even though she experienced "unrelenting" pain during the last two years of her work. *Id.* at 1268. She only "left work on the advice of her treating physician[,]" *id.*, and only after "persistent attempts to work with her impairments" proved unavailing, *id.* at 1270.

Here, the ALJ questioned Plaintiff about his work history at the hearing and discovered Plaintiff worked for 20 years with the State of New Mexico, 15 of those years as a security guard at a museum. *See* AR at 57. In 2014, Plaintiff retired with disability benefits and a pension on the advice of the State's Public Employees Retirement Association, because after his heart attack in 2008, his health issues gradually worsened each year. *See* AR at 59. While ALJ Gontis did not specifically discuss Plaintiff's work history, the Court does not find that the ALJ "select[ed] insignificant factors in finding [Plaintiff] not credible regarding [his] limitations and there is no

indication that[,]" like the plaintiff in *Tyson*, Plaintiff "stopped working on the advice of a doctor." *See Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 796 (10th Cir. 2013).

Plaintiff next argues that the ALJ mischaracterized the evidence regarding Plaintiff's activities of daily living and asserts it was error to call his limitations in this area minor. *Doc. 18* at 21. "When a claimant establishes a medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms complained of, the ALJ must evaluate the intensity, persistence, and functionally limiting effects of the symptoms to determine the extent to which the symptoms affect the claimant's capacity for work." *Holcomb v. Astrue*, 389 F. App'x 757, 760 (10th Cir. 2010) (citing 20 C.F.R. §§ 404.1529(c), 404.929(c)). "To do this, the ALJ must make a finding about the credibility of the claimant's statements regarding the symptoms and their functional effects." *Id.* (citing SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996)). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Id.* (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation omitted)). "[F]indings with respect to a claimant's credibility 'should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Id.* (quoting *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004) (internal quotation omitted)).

Relevant here, the ALJ noted Plaintiff's testimony that he helps at home with vacuuming, sweeping, washing dishes, and laundry (*see* AR at 41, 79), and his statements on a Pain Questionnaire that he can drive and do errands such as shopping (*see* AR at 41, 270). When the ALJ asked Plaintiff if there is anything he "can't do when

[he's] doing" the listed household chores, Plaintiff responded that he cannot reach up high. AR at 79. The ALJ found that Plaintiff's description of his daily activities are "not entirely consistent with [his] allegations of disabling symptoms and limitations" AR at 41, and his subjective complaints and allegations are "not fully consistent with the evidence of record . . . ." AR at 41-42. The ALJ then goes on to summarize the record, "which shows [Plaintiff] generally had normal physical examination findings, including normal gait without the need for an assistive device and normal strength and range of motion throughout his musculoskeletal system, and" that "he is able to control his diabetes mellitus with medication." AR at 43 (citations omitted).

The Court may not reweigh the record evidence; it may only review the ALJ's "decision to ensure that [he] applied the correct legal standard and that [his] findings are supported by substantial evidence." *Kayser v. Berryhill*, No. 16-cv-0978 SMV, 2017 WL 4857442, at *3 (D.N.M. Oct. 25, 2017) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). The Court finds that the ALJ's credibility findings are supported by and linked to substantial evidence in the record. *See id.* at *4 (citing *Kepler*, 68 F.3d at 391).

## 2. The RFC is based on substantial evidence.

Plaintiff also argues that the ALJ failed to take into account Plaintiff's issues with his prior myocardial infarction, which causes him to experience shortness of breath, and did not incorporate this limit into the RFC. *Doc. 18* at 20-21. An ALJ must consider both severe and non-severe impairments when determining the RFC. *See* 20 C.F.R. § 404.1545(a)(2). Plaintiff contends that the ALJ ignored evidence related to his shortness of breath when determining his RFC, including findings from his consultative examination with Dr. Jeffrey Glassheim, D.O., who stated that Plaintiff "gets short of

9

breath very easily due to [his] cardiac issue" and experiences "shortness of breath on exertion" (AR at 486), and Plaintiff's own testimony regarding his shortness of breath on exertion (AR at 64-66). It is clear to the Court, however, that the ALJ did not ignore this evidence, as he specifically commented on both Plaintiff's testimony (AR at 41, 64-65 – noting Plaintiff testified he has "difficulty breathing and gets out of breath easily"), his function report (AR at 41, 276 – noting "minor difficulties with shortness of breath"), and the fact that he experienced shortness of breath at the consultative examination with Dr. Glassheim (AR at 42, 483). Moreover, ALJ Gontis also found that, with respect to Plaintiff's myocardial infarction, the "conditions were being managed medically, . . . the longitudinal medical record shows [it] did not cause any ongoing functional limitations[,]" and "no aggressive treatment was recommended or anticipated . . . ." AR at 39.

Importantly, the ALJ's RFC aligns with Dr. Glassheim's opinion. Dr. Glassheim commented several times about shortness of breath in the "History of Present Illness," "Physical Exam," and "Impression" sections of his opinion. *See* AR at 481-86. He opined that Plaintiff:

> can be expected to sit and stand normally in an 8 hour workday with normal breaks. [He] has mild limitations with walking due to shortness of breath on exertion. [He] does not need an assistive device with regards to short and long distances and uneven terrain. [He] has mild limitations with lifting and carrying weight due to shortness of breath on exertion and left shoulder pain and weakness. There may be limitations on repetitive bending, stooping, crouching, squatting and so on and [he] will be able to perform these occasionally due to shortness of breath on exertion.

AR at 486. In the RFC, ALJ Gontis limited Plaintiff's lifting and carrying to 20 pounds occasionally and 10 pounds frequently; he limited him to sitting, standing, and/or walking for six hours in an eight-hour workday; he limited him to only occasionally

climbing ramps or stairs and never climbing ladders, ropes, or scaffolds. AR at 40. While Plaintiff holds Dr. Glassheim's opinion up as providing evidence of a more restrictive RFC, Plaintiff fails to acknowledge that the RFC tracks Dr. Glassheim's opinion almost completely.[4] *See Doc. 18* at 20. As the Commissioner points out, Plaintiff does not disagree with how the ALJ weighed Dr. Glassheim's opinion. *See Doc. 20* at 14. Moreover, nothing Plaintiff cites to establishes that the ALJ's decision is not supported by substantial evidence. The Court may not reweigh the evidence and will deny Plaintiff's motion on this issue. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

### C.    The ALJ adequately evaluated Ms. Clark's opinions.

Plaintiff argues that ALJ Gontis erred in giving little weight to Ms. Clark's opinion because she was an "other source" and because her opinion was not consistent with the record evidence. *Doc. 18* at 18-19. Plaintiff established care with Ms. Clark as his primary provider on August 6, 2015. *See AR* at 82, 524. He saw Ms. Clark four times between August 2015 and June 2016. AR at 524-53.

In August 2015, Plaintiff presented to Ms. Clark with diabetes mellitus type 2. AR at 524. Ms. Clark stated that Plaintiff had lost 80 pounds over the last year, his "disease

---

[4] The only section of the RFC that does not follow Dr. Glassheim's opinion is that it allows Plaintiff to frequently balance, stoop, *crouch*, kneel, or crawl. AR at 40. Dr. Glassheim opined that Plaintiff *may* be limited with respect to *repetitive* crouching. AR at 486. Plaintiff does not specifically raise this issue. *See Docs. 18*; *21*. Regardless, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO) descriptions for security guard, gate guard, and patrol conductor specify that the physical demand of "crouching" is "not present," and for community service patrol officer is "occasional." *See* SCO, 45, 46, ID-2, http://onlineresources.wnylc.net/docs/SelectedCharacteristicsSearch121110.pdf. Thus, any error in failing to limit Plaintiff to occasional rather than frequent crouching is harmless.

course ha[d] been fluctuating" and his diabetic symptoms were worsening. AR at 524-25. Plaintiff's Hemoglobin A1C (HbA1c) level was high at 14% in both March and August 2015.[5] *See* AR at 524, 511, 553. Ms. Clark noted that Plaintiff was having sweats (a hypoglycemia symptom) and exhibited heart disease (a diabetic complication). AR at 525. She reported that he complies with his treatment for diabetes "all of the time[,]" follows a diabetic diet, and "participates in exercise intermittently." AR at 525. She made no special notes in the review of systems (i.e., eyes, respiratory, cardiovascular, musculoskeletal, etc.) and made normal findings in the physical exam notes (i.e., normal musculoskeletal range of motion, normal efforts and breath sounds and no respiratory distress for pulmonary/chest, etc.). AR at 528-29.

In December 2015, Ms. Clark counseled Plaintiff on the management and consequences of uncontrolled diabetes. AR at 532. She found no diabetic or hypoglycemic symptoms and no hypoglycemic complications, but she did note neuropathy (a diabetic complication). AR at 532. She noted that Plaintiff "is compliant with treatment most of the time[,]" he follows "a generally healthy diet[,]" and "[h]e rarely participates in exercise." AR at 532. Again, she made no special notes in the review of symptoms and made normal findings in the physical exam notes (i.e., normal musculoskeletal range of motion with no edema, normal efforts and breath sounds and no decreased breath sounds or wheezes for pulmonary/chest, etc.). AR at 536.

Plaintiff noted in March 2016 that he had bilateral foot pain. AR at 538. A foot

---

[5] An individual without diabetes has an HbA1c level that ranges from 4 to 5.6%, and "[t]he target A1c level for people with diabetes is usually less than 7%." *Hemoglobin A1c (HbA1c) Test for Diabetes*, https://www.webmd.com/diabetes/guide/glycated-hemoglobin-test-hba1c.

exam revealed crepitus on both feet, but no other problems.[6] AR at 544. Ms. Clark stated that Plaintiff's "disease course has been improving" and found no hypoglycemic or diabetic symptoms or complications. AR at 539. Plaintiff was fully complying with his treatment plan and exercising daily. AR at 539. Ms. Clark made no special notes in the review of symptoms and made normal findings in the physical exam notes, with the exception of the crepitus on both feet. AR at 543-44. Ms. Clark prescribed gabapentin for diabetic nerve pain. AR at 545.

At his June 9, 2016 visit with Ms. Clark, Plaintiff complained of "bilateral knee pain with exacerbation of neuropathy" and reported that his "right knee gave out a few months ago." AR at 546. Ms. Clark ordered x-rays and put Plaintiff on a trial of Voltaren gel. AR at 546. Plaintiff's HgA1c level was at 6.8, and Ms. Clark "commended [him] on [his] control." AR at 546. She found no hypoglycemic symptoms or complications, no diabetic symptoms, and reported retinopathy (a diabetic complication). AR at 547. Ms. Clark stated that Plaintiff was fully complying with his treatment, following a diabetic diet, and participating in exercising intermittently. AR at 547. As before, Ms. Clark made no special notes in the review of symptoms and made normal findings in the physical exam notes. AR at 550-51. With respect to his right knee, Ms. Clark found that Plaintiff had a "normal range of motion, no swelling, no laceration, normal alignment and no bony tenderness. No lateral joint line and no [lateral collateral ligament] tenderness noted." AR at 551.

---

[6] Crepitation is "a grating or crackling sound or sensation (as that produced by the fractured ends of a bone moving against each other or as that in tissues affected with gas gangrene)." Crepitation, *Merriam-Webster*, https://www.merriam-webster.com/medical/crepitation.

ALJ Gontis summarized the treatment notes for all four visits with Ms. Clark. *See* AR at 42. He noted the "normal and unremarkable physical examination findings, including normal range of motion throughout [Plaintiff's] musculoskeletal system" at each of the visits. AR at 42. The ALJ discussed Ms. Clark's statements that Plaintiff's diabetes was uncontrolled as late as December 2015 (AR at 42 (citing AR at 531-37)), but was improving with a decreased A1c level in March 2016 (AR at 42 (citing AR at 539)) and was "controlled with medication" in June 2016 (AR at 42 (citing AR at 546-47)). The ALJ commented on Ms. Clerk's finding of crepitus in Plaintiff's feet and that x-rays Ms. Clark ordered "showed mild to moderate knee osteoarthritis." AR at 42 (citing AR at 544, 567).

The ALJ detailed the Medical Source Statement of Ability to do Work-Related Activities (Physical) that Ms. Clark completed on December 16, 2016. *See* AR at 43-44, 572-75. Ms. Clark opined that Plaintiff  "could lift and/or carry less than [ten] pounds occasionally and frequently, could only stand and/or walk for less than two hours in an eight-hour day, could only sit for less than six hours in an eight-hour day, and could never climb, balance, kneel, crouch, crawl, or stoop." AR at 43 (citing AR at 572-573). "Ms. Clark indicated that [Plaintiff] could only occasionally reach in all directions, handle, feel, and finger." AR at 43 (citing AR at 574). The ALJ gave Ms. Clark's opinion "little weight" for two reasons: first, he noted that she "is not an acceptable medical source and [her] opinion, standing alone, cannot constitute documentation of severe or disabling vocational limitations." AR at 43; *see also* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Second, the ALJ found that Ms. Clark's opinion that Plaintiff "is extremely limited in his physical capacity is not supported by the medical record as a

whole, which shows [he] generally had normal physical examination findings, reported the ability to exercise by walking, and is therefore capable of performing light exertional work with additional limitations." AR at 44 (citing AR at 482-85, 493-94, 512-14, 529, 539, 543, 546-47, 551-52).

Plaintiff argues that ALJ Gontis unfairly weighed Ms. Clark's opinion because she was an "other source." *Doc. 18* at 19. As Plaintiff points out, an "other source" opinion may be used to determine the severity and degree of a claimant's limitations. *See* SSR 06-03p, 2006 WL 2329939; *see also Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007).

In *Frantz*, the plaintiff had received treatment for bipolar disorder, anxiety, and migraine headaches. 509 F.3d at 1300. The plaintiff "never had a treating physician[,]" rather, "a large part of her medical history [was] comprised of reports from . . . a clinical nurse specialist (CNS)[,]" which is not an "acceptable medical source" under SSR 06-03p. *Id.* at 1300-01. The ALJ in *Frantz* disregarded the CNS's "medical opinion in favor of opinions from two examining physicians who each saw [the plaintiff] only once and who each considered a particular aspect of [her] condition and found her to be capable of work, despite not having considered all of her impairments in combination." *Id.* at 1301. The Tenth Circuit reversed, noting that the ALJ referred to some of the CNS's treatment notes "but did not discuss what weight he gave to her opinion on the severity of [the plaintiff's] limitations and on the functional effect those limitations have on her overall ability to work." *Id.* at 1302. The ALJ also "ignored evidence from [the CNS] that would support a finding of disability while highlighting evidence favorable to the finding of nondisability." *Id.* The Tenth Circuit reiterated that an ALJ must discuss both the

evidence that supports his decision, as well as the "uncontroverted evidence he chooses not to rely upon [and the] significantly probative evidence he rejects." *Id.* (quoting *Clifton*, 79 F.3d at 1010 (internal citations omitted)).

The facts in *Frantz* are distinguishable from those here. First, ALJ Gontis did not fail to assign a weight to Ms. Clark's opinion; he gave it little weight and he discussed his reasoning. AR at 43-44. Nor did the ALJ ignore evidence from Ms. Clark that supported a finding of disability – he detailed her opinion from the Medical Source Statement, and he summarized her exam findings, including her notes that Plaintiff's diabetes was uncontrolled in December 2015, that Plaintiff had crepitus in both feet in March 2016, and that Ms. Clark ordered x-rays after Plaintiff complained of knee pain and found mild to moderate knee osteoarthritis. AR at 42.

Moreover, the Court finds ALJ Gontis adequately addressed the factors ALJs are to consider when weighing "other source" opinions:

> Opinion evidence from "other sources" is evaluated using the factors outlined in 20 C.F.R. § 416.927(d), as explained in further detail in [SSR] 06-03p . . . . These factors include:
>
> [1.] How long the source has known and how frequently the source has seen the individual;
> [2.] How consistent the opinion is with other evidence;
> [3.] The degree to which the source presents relevant evidence to support an opinion;
> [4.] How well the source explains the opinion;
> [5.] Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
> [6.] Any other factors that tend to support or refute the opinion.

*Knight v. Astrue*, 388 F. App'x 768, 772 (10th Cir. 2010) (quoting SSR 06-03p, 2006 WL 2329939, at *4-5).

With respect to the first and fifth factors, the ALJ summarized the records from Plaintiff's four visits with Ms. Clark, an FNP. *See* AR at 42-43. Plaintiff argues that "the ALJ failed to consider the extent of [his] treating relationship with Ms. Clark[,]" and argues that the record shows he had "at least five" visits with her. *Doc. 18* at 18 (citing AR at 524-72). The Court finds that the ALJ adequately summarized the four treatment records available in the record. There are two additional encounter dates in the range of pages Plaintiff cites, but they are records of labs and x-rays only; there is no record of a fifth visit with Ms. Clark. *See* AR at 563-67.

Regarding the third and fourth factors, the ALJ detailed Ms. Clark's treatment notes and her Medical Source Statement of Ability to do Work-Related Activities (Physical). AR at 42-44. With respect to the second factor, the ALJ noted that Ms. Clark's opinion was not supported by the record evidence. AR at 44. The ALJ cited specific medical records to support his conclusion that Ms. Clark's opinion was inconsistent with generally "normal physical examination findings" and evidence that Plaintiff was able to walk for exercise. AR at 44 (citing AR at 482-85, 493-94, 512-14, 529, 539, 543, 546-47, 551-52). Several of these records are from Ms. Clark's own treatment notes, which the Court detailed above.

Plaintiff contends that "the fact that [he] regularly walks for exercise should not weigh against Ms. Clark's opinions since he was ordered to do so by other physicians." *Doc. 18* at 18 (citing AR at 389). The Court finds that the ALJ's comment about exercise may simply go to support his finding that Ms. Clark's opinion is inconsistent with her own treatment records, which at times reflects that Plaintiff exercises intermittently (AR at 525, 547) or even daily (AR at 539).

Plaintiff complains that the ALJ "failed to consider the significant evidence that supports Ms. Clark's opinions" and "never discusses the consistency of Ms. Clark's findings with Plaintiff's testimony." *Doc. 18* at 18. Plaintiff lists several pieces of evidence he claims the ALJ ignored, including an abnormal EKG, crepitus, an x-ray that demonstrated mild to moderate osteoarthritis, neuropathy, and findings of shortness of breath. *Id.* This is not entirely true. The ALJ mentions the crepitus and the x-ray that showed osteoarthritis (AR at 42), and he adequately notes the pain in Plaintiff's knees and feet (AR at 41-42), which were both discussed in reference to neuropathy (AR at 532, 546 (Ms. Clark noting foot and knee pain when referencing neuropathy), and at 80 (Plaintiff discussing foot pain at the hearing when asked about neuropathy)). The ALJ also specifically notes Ms. Clark's own examinations that revealed "normal sensory findings in [Plaintiff's] feet" (AR at 42 – citing AR at 493-94), "normal sensation in his feet and normal gait." AR at 42 (citing AR at 551-52). Further, the ALJ noted Ms. Clark's normal exam findings, which included notes at each visit regarding normal breath sounds and no respiratory distress. *See* AR at 342. Finally, the ALJ examined the evidence and Plaintiff's testimony regarding his shortness of breath and made an adequate credibility determination, as discussed above. AR at 41, 42.

Ultimately, the Court finds that ALJ Gontis adequately weighed Ms. Clark's opinion. Moreover, the Court finds that the ALJ's RFC finding is supported by substantial evidence. Therefore, the Court will deny Plaintiff's Motion on this issue as well.

**D.    The Court further declines to reverse based on missing medical records or the requirements of Plaintiff's past relevant work.**

Plaintiff argues that the ALJ erred by failing to obtain medical records regarding an abnormal EKG and a hospitalization due to complications from diabetes. *Doc. 18* at 23. The Commissioner contends that both records predate Plaintiff's alleged onset date and are thus "of diminished relevance." *Doc. 20* at 17.

Plaintiff was represented at the hearing before the ALJ by Mr. John Bishop. *See* AR at 53. "Although not an attorney, [Mr. Bishop] represents Social Security claimants, including Plaintiff, in a professional capacity." *See Shortnacy v. Colvin*, No. CIV 13-297-HE, 2014 WL 4716075, at *4 (W.D. Okla. Aug. 26, 2014); *see also* AR at 166-67 (reflecting that Plaintiff hired Mr. Bishop pursuant to a contingency fee agreement). "The ALJ's duty to fully and fairly develop the medical record is heightened where, as here, the Plaintiff is represented by a non-attorney." *Dawkins v. Astrue*, No. CIV-09-125-F, 2010 WL 476710, at *5 (W.D. Okla. Feb. 5, 2010) (citing *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993)); *see also Miracle v. Barnhart*, 187 F. App'x 870, 874 (10th Cir. 2006) (noting that where a claimant is pro se or represented by a non-attorney, an ALJ's duty to develop the record is "particularly acute").

At the hearing, the ALJ asked Mr. Bishop if the medical record was complete, and he confirmed that it was. AR at 54. Plaintiff, who is now represented by an attorney, asserts that the ALJ erred by failing to obtain these two medical records. *See Doc. 18* at 23; *see also Shortnacy v. Colvin*, No. CIV-13-297-HE, 2014 WL 4716075, at *4 (W.D. Okla. Aug. 26, 2014). The abnormal EKG record is referenced in an August 2014

treatment note listing "chronic conditions," a list that includes diabetes (listed as both controlled and uncontrolled), myocardial infarction (old) and a need for an influenza vaccination. AR at 333. The hospitalization is referenced in a July 2013 treatment note. *See* AR at 371. The provider noted that Plaintiff "present[ed] for follow[-]up of a hospital admission, he was discharged on [July 13, 2013,] after a 5 day admission for OOC DM and folliculitis." AR at 371; *see also Doc. 18* at 23 (referring to the hospitalization as one for "diabetic ketoacidosis").

The Court finds that the records do not detract from the substantial evidence supporting the RFC. The 2013 hospitalization was for "OOC DM" (AR at 371), or "diabetic ketoacidosis" (*Doc. 18* at 23). The provider noted that Plaintiff "was admitted for a suddenly poorly-controlled diabetes[,]" but once he "was begun on insulin, [he] felt better[ and was] sent home." AR at 371. The ALJ found that, based on the record evidence, Plaintiff's diabetes was controlled with medication. The hospitalization for uncontrolled diabetes is in line with the ALJ's conclusion.

The abnormal EKG also predates the alleged onset date, but it is within 12 months of his application date. *See Quintana v. Astrue*, No. 09CV077 RLP, 2009 WL 10706694, at *4 (D.N.M. Dec. 30, 2009) (noting that an ALJ must "develop a complete medical record by obtaining medical evidence from the twelve months prior to the date of plaintiff's application for benefits") (citing 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1512(d)). The Court finds it noteworthy that neither Plaintiff nor his attorney have since "obtained (or, so far as [the Court] can tell, tried to obtain) for themselves the records about which they now complain – suggesting that counsel has abandoned his role as advocate in favor of relegating that responsibility to the ALJ." *See id.*

Regardless, this abnormal EKG, which Plaintiff's physicians apparently never followed up or commented on aside from a single note acknowledging its existence, does not overwhelm the substantial evidence the ALJ relied on in finding Plaintiff is not disabled. The Court finds the record was adequate to support the ALJ's decision and finds no reversible error in his failure to obtain these two records.

Finally, Plaintiff argues that the position of security guard exceeds Plaintiff's RFC. *Doc. 18* at 23. ALJ Gontis limited Plaintiff to occasional reaching with his left arm, but the position of a security guard requires frequent reaching. *See* SCO at 45, http://onlineresources.wnylc.net/docs/SelectedCharacteristicsSearch121110.pdf. The Commissioner notes that the VE addressed this in her testimony. *See Doc. 20* at 18. When the ALJ asked the VE about a hypothetical individual with Plaintiff's RFC – including a limitation to "occasional reach[ing] with his left upper extremity over his head" – the VE replied that "the DOT doesn't differentiate between left and right hand or the direction of the reaching" and found that the position of "security guard would be consistent with that hypothetical." AR at 84-85. Because the ALJ posed a hypothetical with all of Plaintiff's limitations in the RFC, and the VE's answer cleared up any discrepancy between occasional and frequent reaching (i.e., Plaintiff was not limited to occasional reaching with his *right* arm), "the VE's answer . . . provided a proper basis for the ALJ's disability decision." *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993)). The Court will deny Plaintiff's Motion on this issue.

**V.     Conclusion**

The Court finds that the ALJ adequately assessed Plaintiff's credibility, analyzed

Ms. Clark's opinion, and determined the RFC. The ALJ did not err in failing to

supplement the record with the two missing medical records. Finally, the Court finds no

error where the ALJ relied on the VE's answer to the hypothetical in reaching a

conclusion on disability and available jobs.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse or Remand (*Doc. 18*) is

**DENIED**.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent